IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD JONES, JILL JONES, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA )<br>)<br>Defendant. )<br>_____ ) | 1:08-CV-01137 AWI DLB<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>[Doc. #48] |

## BACKGROUND

On January 10, 2011, Plaintiffs Richard and Jill Jones filed a First Amended Complaint ("Complaint") against Defendant United States of America. The Complaint alleges causes of action for "Dangerous Condition of Public Property/Direct Negligence" and "Loss of Consortium." Defendant moves to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion will be granted.

## ALLEGED FACTS

The Wawona Hotel is owned by the United States and is managed by Delaware North Companies, Inc. ("DNC") pursuant to a concession contract. Complaint at ¶¶ 4-5. On August 1, 2005, Richard, an employee of DNC, stepped down into the entrance of the Wawona Hotel's boiler room and fell forward, striking his forehead and left arm on the boiler. Id. at ¶¶ 5, 10. The step down into the boiler room is more than twelve inches. Id. at ¶ 10. At the time of the

accident, no warnings were posted and lighting inside the boiler room was poor. Id. As a result of the fall, Richard lost consciousness for a brief period of time and suffered a displaced fracture at the radial neck of his left elbow. Id. at ¶ 11.

Under the concession contract, DNC is not free to construct or modify any portion of the Wawona Hotel without first obtaining Defendant's permission and approval of "the location, plans and specifications thereof." Id. at ¶ 15. If Defendant does not approve of a construction project for any reason, then DNC cannot proceed with that project. Id. Further, Defendant retains the ability to make changes to structures on the Wawona Hotel under the concession contract. Id.

A concrete pour created the step into the boiler room. Id. Defendant failed to pre-approve in writing the actual construction or modification of the step into the boiler room as required by the concession contract. Id. William Rust, an employee of Defendant, inspected and reviewed the premises after the concrete pour and approved the creation of the step. Id. Rust had the control, ability and authority under the concession contract to request that the dangerous and hazardous condition be changed, but failed to remedy the hazardous condition or place warnings in the area. Id.

Plaintiffs allege that Defendant negligently owned, controlled, maintained, retained control and designed the boiler room, which caused Richard's injuries and damages. Id. at ¶ 14. Plaintiffs allege that as a result of Richard's injuries caused by the dangerous condition, Jill is deprived of the care, companionship and affection of her husband. Id. at ¶ 19.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th

Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

3

1  Iqbal, 129 S.Ct. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-
2  conclusory 'factual content,' and reasonable inferences from that content, must be plausibly
3  suggestive of a claim entitling the plaintiff to relief."  Moss v. United States Secret Serv., 572
4  F.3d 962, 969 (9th Cir. 2009).

5  If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to
6  amend even if no request to amend the pleading was made, unless it determines that the pleading
7  could not possibly be cured by the allegation of other facts."  Doe v. United States, 58 F.3d 494,
8  497 (9th Cir. 1995).  In other words, leave to amend need not be granted when amendment would
9  be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## DISCUSSION

Under the Federal Tort Claims Act ("FTCA"), the government is liable for claims to the extent a private party would be liable under similar circumstances.  28 U.S.C. § 1346(b).  The law of the state where the act or omission occurred determine whether an actionable duty exists under the FTCA.  Henderson v. United States, 846 F.2d 1233, 1234 (9th Cir. 1988).

1.  Negligent Exercise of Retained Control

Under California law, the "hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite[.]"  Hooker v. Dep't of Transp., 27 Cal. 4th 198, 202 (2002).  However, the hirer of an independent contractor is liable to an employee of the contractor if the "hirer's exercise of retained control affirmatively contributed to the employee's injuries."  Id.  An "affirmative contribution" occurs when the hirer is "actively involved in, or asserts control over, the manner of performance of the contracted work."  Id. at 215.  "Such an assertion of control occurs, for example, when the [hirer] directs that the contracted work be done by use of a certain mode or otherwise interferes with the means and methods by which the work is to be accomplished."  Id.  An "affirmative contribution need not always be in the form of actively directing a contractor or contractor's employee."  Id. at 198 n.3.  "There will be times when a hirer will be liable for its omissions" such as when "the

hirer promises to undertake a particular safety measure" and then fails to do so.  Id.

For example, in Hooker, the employee served as a crane operator for a general contractor. Id. at 198.  The general contractor was hired by the California Department of Transportation ("Caltrans") to construct an overpass.  Id.  "The overpass was 25 feet wide, and the crane with the outriggers extended was 18 feet wide, so [the employee] would retract the outriggers to allow other construction vehicles or Caltrans vehicles to pass."  Id.  Prior to the fatal accident, the employee retracted the outriggers and left the crane.  Id.  When the employee returned, he attempted to swing the boom without first extending the outriggers.  Id.  The weight of the boom caused the crane to tip over and the employee was thrown to the pavement and killed.  Id.

The Plaintiff in Hooker, the employee's widow, contended that Caltrans affirmatively contributed to her husband's death.  Id. at 202.  Plaintiff argued that Caltrans was aware that the crane operators retracted their outriggers in order to let vehicles pass and knew "that a crane would be unstable if its boom were extended over its side when its outriggers were retracted." Id. at 202-03.  Further, Plaintiff argued that Caltrans was responsible for safety on the worksite and had the power to correct any unsafe conditions, but failed to correct the hazardous condition that killed her husband.  Id. at 202.

The California Supreme Court held that Caltrans did not affirmatively contribute to the employee's death by permitting traffic to use the overpass while the crane was being operated. Id. at 215.  The court stated that there was at most evidence that Caltrans was "aware of an unsafe practice and failed to exercise the authority they retained to correct it."  Id.  The court emphasized that Caltrans "did *not* direct the crane operator to retract his outriggers to permit traffic to pass."  Id.

In this case, Plaintiffs allege that Defendant (1) was aware of the dangerous condition of the step into the boiler room; (2) failed to exercise its authority under the concession contract to correct it; and (3) approved the creation of the hazardous step after it was built.  Complaint at ¶ 15.  Similar to Hooker, Plaintiffs' factual allegations are insufficient to state a claim for negligent

exercise of retained control based on a direct affirmative contribution by Defendant. Plaintiffs have failed to allege any facts from which the Court can infer that Defendant was actively involved in, or asserted control over, the manner of DNC's performance with respect to the concrete pour that created the step into the boiler room. Moreover, there is no allegation that Defendant directed DNC to do anything at all.

In their opposition, Plaintiffs contend that they sufficiently allege that Defendants affirmatively contributed to Richard's injuries. Opposition at 7:4-13. Plaintiffs argue that their case is similar to McCarty v. Department of Transportation, 164 Cal. App. 4th 955 (2008). Id. In McCarty, the employee served as a heavy equipment operator for an independent contractor. 164 Cal. App. 4th at 961. The independent contractor was hired by Caltrans to build an extension of a freeway. Id. The employee "was using an excavator to remove a utility pole from the freeway right-of-way when the pole fell on the roof of his excavator, hitting him in the back of the head and leaving him a near-quadriplegic." Id. The employee sued Caltrans and the jury found Caltrans liable for negligent exercise of retained control. Id. at 962. Subsequently, Caltrans brought a motion for new trial. Id. The trial court judge "granted a partial new trial, ruling that the jury had not been properly instructed on the retained control doctrine." Id.

Plaintiffs contend that the "Court of Appeal in McCarty allowed the jury verdict in favor of the injured employee to stand because there was evidence to support negligent exercise of retained control[.]" Opposition at 6:13-15. However, this is a misstatement of the case. The court did not affirm the jury verdict, but instead concluded that the trial court judge "did not err by granting a partial new trial on the retained control doctrine." McCarty, 164 Cal. App. 4th at 986. The court agreed with the trial court judge that the jury was not properly instructed on the retained control doctrine. Id. at 984-86. Furthermore, even assuming Plaintiffs' contention was true, McCarty is factually distinguishable from Plaintiffs' case. Plaintiffs own opposition states that in the McCarty case Caltrans "instruct[ed] the subcontractor to remove the pole with an excavator[.]" Opposition at 6:18. Thus, unlike this case, in McCarty, there was a direct

6

affirmative contribution by the hirer of the independent contractor.

Finally, with respect to negligent exercise of retained control based on an omission, Plaintiffs argue that they state a claim because they allege that Defendant failed to review and approve DNC's plans for the construction modification project as required by the concession contract. Opposition at 7:14-23; Complaint at ¶ 15. However, this allegation is insufficient to state a claim. Plaintiffs have not alleged that Defendant promised to undertake a *particular safety measure* and then failed to fulfill that promise.

Accordingly, Defendant's Motion to Dismiss Plaintiffs' claims for negligent exercise of retained control is GRANTED without prejudice and with leave to amend.

2.   Premises Liability

In California, a landowner that hires an independent contractor may be liable to the contractor's employees if the following conditions are present: the landowner knew, or should have known, of a latent or concealed preexisting hazardous condition on its property, the contractor did not know and could not have reasonably discovered this hazardous condition, and the landowner failed to warn the contractor about this condition. Kinsman v. Unocal Corp., 37 Cal. 4th 659, 664 (2005).

In their Complaint, Plaintiffs allege that Defendant owns the Wawona Hotel, had knowledge of the hazardous condition, and failed to place proper warnings around the area. Complaint at ¶ ¶ 4, 15. However, Plaintiffs have not alleged that the hazardous condition was unknown to DNC or that DNC could not have reasonably discovered the hazardous condition. Plaintiffs have also not alleged that Defendant failed to warn DNC about the hazardous condition.

Therefore, Plaintiffs have not stated a premises liability claim based on a landowner's failure to warn. Accordingly, Defendant's Motion to Dismiss Plaintiffs' premises liability claim is GRANTED without prejudice and with leave to amend.

      3.     General Supervisory Right to Control DNC's work

In their Complaint, Plaintiffs allege that under the concession contract DNC is not free to construct or modify any portion of the Wawona Hotel without first obtaining Defendant's permission and approval of "the location, plans and specifications thereof." Complaint at ¶ 15. Plaintiffs further allege that Defendant retains the ability to make changes to the Wawona Hotel under the concession contract. Id.

Under California law, the "general supervisory right to control the work so as to insure its satisfactory completion in accordance with the terms of the contract does not make the hirer of the independent contractor liable for the latter's negligent acts in performing the details of the work." Lopez v. C.G.M. Dev., Inc., 101 Cal. App. 4th 430, 442 (2002); McDonald v. Shell Oil Co., 44 Cal. 2d 785, 788 (1955). Therefore, Plaintiffs have not stated any claim against Defendant based on these allegations.

## CONCLUSION

Accordingly, Defendant's Motion to Dismiss Plaintiffs' Complaint is GRANTED without prejudice and with leave to amend. Plaintiffs have thirty (30) days to file a Second Amended Complaint consistent with this order.

IT IS SO ORDERED.

Dated:   February 28, 2011

CHIEF UNITED STATES DISTRICT JUDGE