IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHARD JONES, JILL JONES,** | 1:08-CV-01137 AWI DLB |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| v. | |
| **UNITED STATES OF AMERICA,** | [Doc. #56] |
| Defendant. | |

### BACKGROUND

On March 30, 2011, Plaintiffs Richard and Jill Jones filed a Second Amended Complaint ("SAC") against Defendant United States of America. The SAC alleges causes of action for "Dangerous Condition of Public Property/Direct Negligence" and "Loss of Consortium." Defendant moves to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion will be granted.

### ALLEGED FACTS

The Wawona Hotel is owned by the United States and is managed by Delaware North Companies, Inc. ("DNC") pursuant to a concession contract. SAC at ¶¶ 4-5. On August 1, 2005, Richard Jones ("Richard"), an employee of DNC, stepped down into the entrance of the Wawona Hotel's boiler room and fell forward, striking his forehead and left arm on the boiler. Id. at ¶¶ 5, 10. The step down into the boiler room is more than twelve inches. Id. at ¶ 10. At the time of

the accident, no warnings were posted and lighting inside the boiler room was poor. Id. As a result of the fall, Richard lost consciousness for a brief period of time and suffered a displaced fracture at the radial neck of his left elbow. Id. at ¶ 11.

Under the concession contract, DNC is not free to construct or modify any portion of the Wawona Hotel without first obtaining Defendant's permission and prior written approval of "the location, plans and specifications thereof." Id. at ¶ 15. For any structural or functional changes on the property, a final approval letter by Defendant is necessary under the superintendent's signature. Id. Defendant retains ultimate decisional authority with respect to construction and modifications on the property. Id. at ¶ 16. If Defendant does not approve of a construction project for any reason, then DNC cannot proceed with that project. Id. Further, if Defendant does not pre-approve in writing of the actual construction or modification, Defendant retains the authority to allow the construction to exist or request that DNC remove or re-do/alter the construction. Id.

William Rust ("Rust"), an employee of Defendant, was the project coordinator for Project 3090. Id. at ¶ 18. The purpose of Project 3090 was to stabilize the six main historic structures that comprise the Wawona Hotel complex. Id. at ¶ 17. In 2004, Rust approved a contract modification of the project to pour and install concrete flooring underneath the Wawona Hotel, including the area leading to the boiler room. Id. at ¶ 18. Rust was never provided any plans or specifications for the contract modification prior to his approval and written approval from the Defendant was not provided before the construction began or was completed. Id. Subsequently, a concrete pour created the step into the boiler room. Id. at ¶ 19. Rust inspected and reviewed the construction and condition after the concrete pour and thus had actual notice of the dangerous condition. Id. Although Rust had the control, ability and authority under the concession contract to request that the dangerous condition be changed, rectified, or in some fashion protected against, he failed to do so. Id.

Plaintiffs allege that Defendant negligently owned, controlled, maintained, retained

control and designed the boiler room, which caused Richard's injuries and damages. Id. at ¶ 14. Plaintiffs allege that as a result of Richard's injuries caused by the dangerous condition, Jill Jones is deprived of the care, companionship and affection of her husband. Id. at ¶ 26.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]" Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## DISCUSSION

Under the Federal Tort Claims Act ("FTCA"), the government is liable for claims to the extent a private party would be liable under similar circumstances. 28 U.S.C. § 1346(b). The law of the state where the act or omission occurred determine whether an actionable duty exists under the FTCA. Henderson v. United States, 846 F.2d 1233, 1234 (9th Cir. 1988).

1.     Negligent Exercise of Retained Control

Under California law, the "hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite[.]" Hooker v. Dep't of Transp., 27 Cal. 4th 198, 202 (2002). However, the hirer of an independent contractor is liable to an employee of the contractor if the "hirer's exercise of retained control affirmatively contributed to the employee's injuries." Id. An "affirmative contribution" occurs when the hirer is "actively involved in, or asserts control over, the manner of performance of the contracted work." Id. at 215. "Such an assertion of control occurs, for example, when the [hirer] directs that the contracted work be done by use of a certain mode or otherwise interferes with the means and methods by which the work is to be accomplished." Id. An "affirmative contribution need not always be in the form of actively directing a contractor or contractor's employee." Id. at 198 n.3. "There will be times when a hirer will be liable for its omissions" such as when "the hirer promises to undertake a particular safety measure" and then fails to do so. Id.

For example, in Hooker, the employee served as a crane operator for a general contractor. Id. at 198. The general contractor was hired by the California Department of Transportation ("Caltrans") to construct an overpass. Id. "The overpass was 25 feet wide, and the crane with

4

the outriggers extended was 18 feet wide, so [the employee] would retract the outriggers to allow other construction vehicles or Caltrans vehicles to pass." Id. Prior to the fatal accident, the employee retracted the outriggers and left the crane. Id. When the employee returned, he attempted to swing the boom without first extending the outriggers. Id. The weight of the boom caused the crane to tip over and the employee was thrown to the pavement and killed. Id.

The plaintiff in Hooker, the employee's widow, contended that Caltrans affirmatively contributed to her husband's death. Id. at 202. Plaintiff argued that Caltrans was aware that the crane operators retracted their outriggers in order to let vehicles pass and knew "that a crane would be unstable if its boom were extended over its side when its outriggers were retracted." Id. at 202-03. Further, plaintiff argued that Caltrans was responsible for safety on the worksite and had the power to correct any unsafe conditions, but failed to correct the hazardous condition that killed her husband. Id. at 202.

The California Supreme Court held that Caltrans did not affirmatively contribute to the employee's death by permitting traffic to use the overpass while the crane was being operated. Id. at 215. The court stated that there was at most evidence that Caltrans was "aware of an unsafe practice and failed to exercise the authority they retained to correct it." Id. The court emphasized that Caltrans "did *not* direct the crane operator to retract his outriggers to permit traffic to pass." Id.

Another instructive case is Tverberg v. Fillner Construction, Inc., No. A120050, 2011 WL 670247, at *1 (Cal. App. 1 Dist. Apr. 5, 2011). In Tverberg, defendant was the general contractor on a project to expand a commercial fuel facility. Id. The project required construction of a metal canopy over the fuel-pumping units. Id. Defendant hired a subcontractor, which delegated the work to a second subcontractor. Id. The second subcontractor then hired plaintiff to be foreperson of the crew to construct the canopy. Id.

Defendant hired another subcontractor to erect eight bollards, which are "concrete posts intended to prevent vehicles from colliding with fuel dispensers." Id. On plaintiff's first day of

5

work, eight holes for the bollard footings had already been dug. Id.  The bollard holes, marked with stakes and safety ribbons, were next to the area where plaintiff was to erect the canopy. Id. Plaintiff asked defendant to cover the bollard holes with large metal plates that were on site, but defendant stated that he did not have the necessary equipment to do so that day. Id.  The following day, with the bollard holes still uncovered, plaintiff began work on the canopy. Id. Plaintiff again asked defendant to cover the bollard holes, but defendant failed to do so. Id.  A short while later, plaintiff fell into a bollard hole and was injured. Id.

The California Court of Appeal held that plaintiff "offered sufficient evidence of a triable issue on affirmative contribution to overcome a motion for summary judgment on a retained control theory of direct liability." Id. at *5.  The court noted that defendant's employee "in charge of the jobsite testified that he concluded that the stakes and safety ribbon that were provided constituted sufficient worker protection." Id. at *4.  The court stated that this "evidence allows an inference that [defendant] affirmatively assumed the responsibility for the safety of the workers near the bollard holes, and discharged that responsibility in a negligent manner, resulting in injury." Id.

In the opposition, Plaintiffs contend that they state a claim for negligent exercise of retained control, relying on the Tverberg case. Opposition at 7:16-18.  Like Tverberg, Plaintiffs argue that Rust approved of the dangerous step into the boiler room and therefore assumed responsibility for the safety of workers near that condition and discharged that responsibility in a negligent manner. Id. at 9:1-3.  In Defendant's reply to Plaintiffs' opposition, Defendant states that the facts of Tverberg "are too dissimilar to support Plaintiffs' argument that approval of the work completed by DNC is actionable" as an affirmative contribution. Reply at 8:24-25. Defendant argues that Tverberg is distinguishable because in this case there are no factual allegations "that a U.S. employee was making determinations as to what safety precautions should be taken at the worksite to protect DNC's employees from the hazards of the worksite." Id. at 9:1-3.

The Court agrees with Defendant that Tverberg is factually distinguishable from the allegations in this case. In Tverberg, there was evidence that the defendant was actively involved in and asserted control over the safety conditions at the worksite. Defendant's employee in Tverberg testified that the stakes and safety ribbon around the bollard holes constituted sufficient worker protection. However, in this case, there is no allegation that Defendant chose one form of worker safety protection over another. The SAC merely alleges that Rust approved of the step into the boiler room after an inspection. SAC at ¶¶ 19 and 23. Therefore, Plaintiffs' reliance on Tverberg is unpersuasive.

Similar to the First Amended Complaint, Plaintiffs' SAC fails to allege how Defendant was actively involved in or asserted control over DNC's work. Therefore, Plaintiffs have failed to state a claim for negligent exercise of retained control. Accordingly, Defendant's motion to dismiss Plaintiffs' claim for negligent exercise of retained control is GRANTED. Since Plaintiffs have again failed to allege any facts with respect to Defendant's affirmative contribution, it is apparent that Plaintiffs cannot rectify this claim through additional allegations. Therefore, dismissal is with prejudice and without leave to amend.

2. Premises Liability

In the opposition, Plaintiffs argue that they have stated a "dangerous condition claim" under California law. Opposition at 4:15-16. Plaintiffs rely on California Civil Jury Instruction No. 1100, which requires that (1) the defendant own the property; (2) the property was in a dangerous condition at the time of the incident; (3) the dangerous condition created a reasonably foreseeable risk of the kind of incident that occurred; (4) the defendant had notice of the condition for a long enough time to have protected against it; (5) plaintiff was harmed; and (6) the dangerous condition was a substantial factor in causing plaintiff's harm. Id. at 4:27-28 and 5:1-5. This law, however, is not applicable to this case.

In Kinsman v. Unocal Corp., 37 Cal. 4th 659 (2005), the Supreme Court of California addressed the issue of when a landowner that hires an independent contractor may be liable to the

7

contractor's employees. The court noted that the "hirer generally delegates to the contractor responsibility for supervising the job, including responsibility for looking after employee safety." Id. at 673. "When the hirer is also a landowner, part of that delegation includes taking proper precautions to protect those obvious hazards in the workplace." Id. "Thus, when there is a known safety hazard on a hirer's premises that can be addressed through reasonable safety precautions on the part of the independent contractor . . . the hirer generally delegates the responsibility . . . to the contractor, and is not liable to the contractor's employee if the contractor fails to do so." Id. at 673-74. The court, however, concluded that the landowner is liable to the contractor's employee if the employee's injury is attributable to an undisclosed hazard. Id. at 674. The court's rationale was that a "landowner cannot effectively delegate to the contractor responsibility for the safety of its employees if it fails to disclose critical information needed to fulfill that responsibility[.]" Id. Therefore, the court held that a landowner that hires an independent contractor may be liable to the contractor's employees if the following conditions are present: the landowner knew, or should have known, of a latent or concealed preexisting hazardous condition on its property, the contractor did not know and could not have reasonably discovered this hazardous condition, and the landowner failed to warn the contractor about this condition. Id. at 664.

In this case, Plaintiffs have again failed to allege that the hazardous condition was unknown to DNC or that DNC could not have reasonably discovered the hazardous condition. Further, Plaintiffs have not alleged that Defendant failed to warn DNC about the hazardous condition. Accordingly, Defendant's motion to dismiss Plaintiffs' premises liability claim is GRANTED. In the Court's previous order dismissing Plaintiffs' First Amended Complaint, the Court explained to Plaintiffs that Kinsman was the applicable premises liability law to this case. Order at 7:10-16. Therefore, it is clear that Plaintiffs cannot rectify this claim through additional factual allegations. Dismissal is with prejudice and without leave to amend.

**CONCLUSION**

IT IS HEREBY ORDERED that Defendant's motion to dismiss Plaintiffs' Second Amended Complaint is GRANTED with prejudice and without leave to amend.

IT IS SO ORDERED.

Dated:   May 27, 2011

CHIEF UNITED STATES DISTRICT JUDGE